# PD-1094-15

PD-1094-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/21/2015 1:49:34 PM
Accepted 8/25/2015 4:26:51 PM
ABEL ACOSTA
CLERK

No. 07-13-00297-CR

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

CHRISTOPHER EARL DARCY,                                    Appellant

v.

THE STATE OF TEXAS,                                        Appellee

Appeal from MOORE County

\*   \*   \*   \*   \*

## STATE'S PETITION FOR DISCRETIONARY REVIEW

\*   \*   \*   \*   \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

FILED IN
COURT OF CRIMINAL APPEALS

August 25, 2015

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1) Does a defendant forfeit a Sixth Amendment complaint about the State's attempt to communicate with him without counsel at a critical stage if he offers evidence of the communication and does not object to further testimony about it, and must a court of appeals address preservation of error before reversing a conviction on this basis?

2) If the State violates a defendant's Sixth Amendment rights by attempting to communicate with him without counsel at a critical stage but no evidence of any incriminating response is offered, does reversible occur when evidence of the mere fact of the violation is admitted?

3) Is it proper to consider unpreserved error in the analysis of harm from a separate error?

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

APPENDIX  (Opinion of the Court of Appeals)

i

# IDENTITY OF THE PARTIES

Appellant: **Christopher Earl Darcy**.

Appellee: **The State of Texas**.

Trial Judge: **Hon. Ron Enns**.

Trial counsel for Appellant: **D. Dale Stemple**, P.O. Box 1878, Dumas, Texas 79029.

Appellate Counsel for Appellant: **R. Walton Weaver**, Herman & Weaver, 320 South Polk, Ste. 902, Amarillo, Texas 79101.

Trial counsel for the State: **Timohty D. Salley**, Assistant District Attorney, 715 S. Dumas Ave., Room 304, Dumas, Texas 79029.

Appellate counsel for the State: **David M. Green**, District Attorney, 715 S. Dumas Ave., Room 304, Dumas, Texas 79029 and **Lisa C. McMinn**, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# INDEX OF AUTHORITIES

**Cases**

*Blackshear v. State*, 385 S.W.3d 589 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . 4

*Carter v. State*, 309 S.W.3d 31 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . 6

*Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999)... . . . . . . . . . . . . 8n

*Darcy v. State*, No. 07-13-00297-CR
(Tex. App.–Amarillo June 25, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 8

*Gilley v. State*, 418 S.W.3d 114 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . 6

*Kansas v. Ventris*, 556 U.S. 586 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7n

*Lackey v. State*, 364 S.W.3d 837 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . 4

*United States v. Morrison*, 449 U.S. 361 (1981). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oliver v. State*, 872 S.W.2d 713 (Tex. Crim. App. 1994).. . . . . . . . . . . . . . . . . . 5

*Peyronel v. State*, __S.W.3d __, No. PD-1274-14 (Tex. Crim. App. 2015). . . . . . 5

*Reyna v. State*, 168 S.W.3d 173 (Tex. Crim. App. 2006).. . . . . . . . . . . . . . . . . . 5

*Reynolds v. State*, 423 S.W.377 (Tex. Crim. App. 2014).. . . . . . . . . . . . . . . . . . 5

*Rubalcado v. State*, 424 S.W.3d 560 (Tex. Crim. App. 2014). . . . . . . . . . . . . . 6, 7

**Codes and Rules**

TEX. CODE CRIM. PROC. 38.23.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. R. EVID. 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

No. 07-13-00297-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

CHRISTOPHER EARL DARCY,                                    Appellant

v.

THE STATE OF TEXAS,                                         Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State of Texas, by and through its State Prosecuting Attorney, respectfully

urges this Court to grant discretionary review of the above named cause.

**<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

The State does not request oral argument.

**<u>STATEMENT OF THE CASE</u>**

A jury convicted Appellant of burglary of a habitation and assessed his

punishment at twelve years' confinement and a fine. In an unpublished opinion, the

1

court of appeals reversed the conviction, holding that Appellant was deprived of his Sixth Amendment right to counsel when an agent of the State attempted to communicate with Appellant without counsel during a critical stage of the proceeding. *Darcy v. State*, No. 07-13-00297-CR (Tex. App.–Amarillo June 25, 2015).

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals reversed the conviction on June 25, 2015. The State filed a motion for rehearing on July 6, 2015, which was denied on July 22, 2015.

## QUESTIONS FOR REVIEW

1) Does a defendant forfeit a Sixth Amendment complaint about the State's attempt to communicate with him without counsel at a critical stage if he offers evidence of the communication and does not object to further testimony about it, and must a court of appeals address preservation of error before reversing a conviction on this basis?

2) If the State violates a defendant's Sixth Amendment rights by attempting to communicate with him without counsel at a critical stage but no evidence of any incriminating response is offered, does reversible occur when evidence of the mere fact of the violation is admitted?

3) Is it proper to consider unpreserved error in the analysis of harm from a separate error?

## ARGUMENT

While Appellant was in jail pending trial on this charge, State's witness, Rebecca Morris, wrote him a letter, offering to "help" him and asking him to

2

respond.[1]  RR 3: 136-37.  Appellant responded to her letter with a message from his brother, Pat, but the contents of his message were not disclosed.  RR 3: 140.[2]

Morris's letter was written at the request of an investigator in the D.A.'s office, who was investigating communications being improperly smuggled in and out of the jail.  RR 3: 139-40, 143-44.  Under the investigator's direction, Morris had written the letter and asked the jail's cook to deliver it to Appellant.  RR 3: 139-40.  The letter wound up in defense counsel's hands, and he confronted Morris with it on cross-examination, asking her to read it aloud.  RR 3: 136-37.[3]

The court of appeals reversed, holding that because the letter was sent at the State's behest, after indictment and without the presence of counsel, the State violated Appellant's Sixth Amendment right to counsel at a critical stage of the proceedings.

---

[1]The note said, "Chris, I know you are going to court Monday. And I have been asked to be a witness. I have talked to [Appellant's brother] & told him I have not given them a statement. Is there anything I can do to help you[?] Please get a note back to me as soon as possible. Rebecca." SX 17.

[2] Morris testified that Pat told her Appellant had given a message to the cook to give him to relay to Morris. RR 3: 140.

[3]Counsel was apparently unaware of the State's involvement with the letter at the time he raised the issue on cross-examination of Morris.  He had presumably intended to expose Morris's willingness to change her testimony on the eve of trial.  When Morris explained the origin of the letter on redirect, counsel changed his tack and elicited testimony from Morris that the prosecutor "assisted in the ruse" and stated, "[T]he 69th district attorney had you write a letter to take to the jail to see if my client would ask you to do something unethical." RR 3: 140-142.

*Darcy*, Slip op. at 7-8. It further held that testimony about the smuggling investigation created the impression that Appellant was involved in wrongdoing, which contributed to the harmfulness of the Sixth Amendment violation. *Id*. at 8.

**Preservation**

Appellant's counsel introduced the existence of the letter and its contents before the jury, stated he had no objection when the State offered the actual letter, did not object to testimony about why the letter was written, and asked Morris if Appellant had responded to it. RR 3: 136-44. Counsel never argued that the communication violated Appellant's Sixth Amendment right to counsel or that testimony about the smuggling investigation was improper extraneous offense evidence.

a. Court of appeals' duty to address

"Preservation of error is a systemic requirement which a court of appeals should review on its own motion." *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012). "[A] court of appeals may not reverse a conviction without first addressing any potential issue of procedural default, even sua sponte." *Lackey v. State*, 364 S.W.3d 837, 844 n.28 (Tex. Crim. App. 2012).

The court of appeals denied the State's motion for rehearing, which argued that error was forfeitable and was forfeited. The court of appeals may have considered it

4

unnecessary to address preservation, believing this type of error is not subject to procedural default. However, "[A]n appellate court may not reverse a conviction without first addressing any plausible argument, whether raised by the parties or not, that the purported error necessitating reversal is subject to error-preservation requirements and, if so, whether that error has been preserved for appeal." *Reynolds v. State*, 423 S.W.377, 384 (Tex. Crim. App. 2014). And, as pointed out below, this type of error requires preservation. Therefore, the court of appeals erred by failing to address the issue.

b. Objection requirement

Any error in this case was procedurally defaulted by Appellant's failure to object, especially after he became aware that Morris was acting as an agent of the State. Some Sixth Amendment violations are subject to procedural default. *See Peyronel v. State*, __S.W.3d __, No. PD-1274-14 (Tex. Crim. App. 2015) (Sixth Amendment right to public trial is forfeitable by failure to object); *Reyna v. State*, 168 S.W.3d 173, 179-80 (Tex. Crim. App. 2006) (Sixth Amendment right to confrontation is subject to procedural default). On the other hand, the *total* deprivation of counsel at a critical stage of the proceedings cannot be forfeited by the mere failure to object. *See Oliver v. State*, 872 S.W.2d 713, 716 (Tex. Crim. App. 1994) (indigent defendant who does not affirmatively request appointed counsel at

5

pretrial hearing does not waive right to assistance of counsel); *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014) (failure to object to counsel's exclusion from in-chambers examination of child witness does not waive right to counsel).

But, as the court of appeals acknowledged, this is not a total depravation case. Slip op. at 9. The issue here requires a determination of whether the State "circumvent[ed] the defendant's right to the assistance of counsel by using an undisclosed government agent to deliberately elicit incriminating information." *Rubalcado v. State*, 424 S.W.3d 560, 570 (Tex. Crim. App. 2014). Whether the investigator acted deliberately is a fact issue because it involves credibility determinations. *See Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010) (whether police acted deliberately in delaying *Miranda* warnings is dependent on credibility determinations and therefore subject to the "great deference" standard of review).

Although an appellate court can review historical facts found by a trial court to determine whether they are supported by the record, the initial determination must be made by the trial court. It follows that an issue requiring a factual determination by the trial court is procedurally defaulted if the appealing party does not ask the trial court to make that determination. Had the trial judge been confronted with an objection, he may have ruled that the letter was sent to determine whether the jail

6

cook was illegally smuggling communications in and out of the jail. Or he may have found that the smuggling investigation was a ruse and the letter was an attempt to get Appellant to incriminate himself. Either way, the initial determination of deliberateness was for the trial judge, and an objection was required to enable him to make that determination.

**Reversible Error**

If the State "circumvent[ed] the defendant's right to the assistance of counsel by using an undisclosed government agent to deliberately elicit incriminating information" under *Rubalcado*, it violated the Sixth Amendment.[4] But the remedy for a Sixth Amendment violation is to suppress incriminating information obtained from the defendant in the absence of his counsel or order a new trial if the evidence was wrongfully admitted. *United States v. Morrison*, 449 U.S. 361, 365 (1981). No self-incriminating evidence was elicited or admitted as a result of any violation in this case. In other words, no evidence obtained in violation of the law was admitted. TEX. CODE CRIM. PROC. 38.23. So even if a Sixth Amendment violation occurred when Morris's letter was delivered to Appellant, no trial error occurred when evidence of the letter was admitted. It is not error for the jury to know that the State engaged in

---

[4] *See Kansas v. Ventris*, 556 U.S. 586, 592 (2009) (the Sixth Amendment violation occurs at the time of the interrogation, not when the incriminating response is offered at trial).

misconduct.

And even if a Sixth Amendment violation translates to trial error, without any fruit of the violation, it was harmless.

**Cumulative harm from unpreserved error**

The court of appeals believed the testimony about the reason for the letter suggested that Appellant was involved in a smuggling operation at the jail, and this rendered the error harmful. Slip op. at 8-9. But this evidence should not be factored into the harm analysis of the alleged Sixth Amendment violation. To the extent the evidence showed that Appellant was involved in smuggling, it was an extraneous act that violated TEX. R. EVID. 404(b). But Appellant did not object to it.

Although this Court has recognized the doctrine of cumulative harm,[5] it has not addressed whether an unpreserved error can render another error harmful, or whether the cumulative effect of several unpreserved errors requires reversal. It seems unlikely that such an application would be recognized, given the systemic nature of error preservation. If the merits of an unpreserved issue cannot be addressed in its own right, it should not be addressed within the harm analysis of a separate issue.

---

[5]*Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999).

8

**Conclusion**

Appellant objected to neither the basis of his complaint on appeal nor the separate alleged error that the court of appeals found contributed to harm. Both errors are forfeitable, and neither should have been addressed on the merits. Further, there can be no actionable Sixth Amendment violation without an incriminating response from Appellant. And even if the technical Sixth Amendment violation constitutes trial error and was not forfeited, it was harmless, and a separate, unpreserved evidentiary error should not be used to bootstrap it into harmful error. This Court should grant review.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, that the case be set for submission, and that after submission, this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool this document contains 2500 words.

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21ˢᵗ day of August, 2015, the State's

Petition for Discretionary Review was served via certified electronic service provider

to:

David M. Green
69th Judicial District Attorney
715 S. Dumas Avenue, Room 304
Dumas, Texas 79029
69thda@moore-tx.com

R. Walton Weaver
HERRMANN & WEAVER
320 South Polk, Ste. 902
Amarillo, Texas 79101
waltlawoffice@gmail.com

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

**APPENDIX**



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00297-CR

_____

CHRISTOPHER EARL DARCY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Moore County, Texas
Trial Court No. 4750; Honorable Ron Enns, Presiding

June 25, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

"[W]hat use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel . . . ?"

*Spano v. New York*, 360 U.S. 315, 326, 79 S. Ct. 1202, 3 L. Ed. 2d 1265 (1959) (William O. Douglas, concurring)

In this appeal, we are confronted with, among other issues, whether an accused's Sixth Amendment right to counsel was violated when an agent of the District Attorney's office covertly contacted Appellant, Christopher Earl Darcy, after judicial

proceedings had been initiated and while Appellant was represented by counsel. Finding his right to counsel was violated, we reverse and remand.

BACKGROUND

Richard and Brenda Kiewiet were in the process of remodeling a house.[1] Just prior to leaving town for four or five days, Brenda drove by the house and noticed a vehicle parked in the carport. Realizing there was a woman in the car, she approached the vehicle. The woman in the vehicle identified herself as Rebecca Morris and inquired whether the house was for sale or rent. Brenda obtained Rebecca's phone number and, after explaining that she would be out of town for a few days, told her she would contact her at a later date.

When Richard and Brenda returned from being out of town, Richard went to the house to continue his remodeling project. When he could not locate his drill, he realized his tool box and tools were missing. He observed a broken storm window at the back of the house and wheel tracks from his missing tool box leading to the back gate.

Nine or ten days later, Brenda was driving around when she observed Rebecca's vehicle parked at a house on a different street. Also parked at the house was a green pickup with a tool box in the back. Because the tool box resembled Richard's missing tool box, she reported her observation to Richard, who then called the police.

Sergeant Kerry Hayes of the Dumas Police Department was dispatched to the scene on a stolen property call. When he arrived, Sergeant Hayes observed Appellant

---

[1] Although the house was not their personal residence, it was a structure "adapted for overnight accommodation of persons," and was, therefore, a "habitation" for purposes of the offense at issue. *See* TEX. PENAL CODE ANN. § 30.01 (1) (West 2011).

2

exit the house while carrying a large Rubbermaid bin containing items he was moving into the green pickup. Sergeant Hayes advised Appellant he was there on a call concerning the possibility of stolen property having been seen in the pickup. Appellant informed the officer that the pickup belonged to his nephew, Wesley, and he had merely borrowed it to move. Appellant consented to a search of the pickup and then asked if he could return to the house to continue moving items. Appellant then confronted Rebecca in her garage and accused her of calling the police. When she denied having done so, he left and did not return to the pickup. When Sergeant Hayes realized that Appellant was not returning, he asked about his whereabouts and was told Appellant had left through the back of the house.

Because Sergeant Hayes did not have any backup to pursue Appellant, he proceeded to search the pickup. There he found a tool box, tools, a red Marlboro duffle type bag containing Appellant's name and various other items of personal property, including a bong.[2] Richard later identified the tool box and some of the tools as his. Appellant was eventually arrested and charged with burglary of a habitation.[3] A jury trial commenced on June 17, 2013, and Appellant entered a plea of not guilty.

During trial, Rebecca testified she knew Appellant through his brother, Pat, who was a former classmate of hers. Rebecca explained that Pat, Pat's son Wesley, and Appellant would occasionally stay at her home. She testified she was looking at houses for her guests to move into because her home could not accommodate both her family and Appellant's family. She also testified she told Appellant about the Kiewiets' house

---

[2] Photos were taken at the scene, but no fingerprints were taken.

[3] *See* TEX. PENAL CODE ANN. § 30.02 (a)(3) (West 2011). As charged, an offense under this section is a second degree felony. *See id.* at § 30.02 (c)(2).

being available. According to Rebecca's testimony, Appellant explained to her he had been by the house and that the owners were "stupid" for leaving the house open.

The jury convicted Appellant of burglary of a habitation and sentenced him to twelve years confinement and a fine of $10,000. After sentence was pronounced, the trial court entered an order requiring Appellant to pay restitution of $2,237.94. Appellant advances five points of error challenging his conviction and the resultant order of restitution. By his first three issues, he questions the sufficiency of the evidence to support his conviction. By his fourth issue, he maintains his due process right to a fair trial was violated by the State creating "evidence" intended to "open the door" to the introduction of extraneous offenses. His fifth and final issue alleges a violation of his Sixth Amendment right to counsel as a result of the District Attorney's office contacting him while awaiting trial, without the benefit of having his counsel present.

ISSUES FOUR & FIVE—RIGHT TO COUNSEL

In addressing Appellant's issues, we do so in a logical rather than sequential order. Issue four, by which Appellant asserts his due process right to a fair trial was violated by the State creating "evidence" intended to "open the door" to extraneous offenses is inextricably tied to his fifth issue, by which he contends his Sixth Amendment right to counsel was violated when an agent of the District Attorney's office surreptitiously contacted him during adversarial proceedings without the benefit of his counsel being present. Agreeing Appellant's rights were violated, we sustain issues four and five.

During Rebecca's testimony, the defense questioned her concerning prior convictions for theft and possession, implying she had concocted a plan to burglarize

4

the Kiewiets' house because she knew they would be out of town. After several exchanges, during recross-examination, defense counsel approached her and asked her to identify the handwriting on a note which was read to the jury. In its entirety, the note provided as follows:

> Chris, I know you are going to court Monday. And I have been asked to be a witness. I have talked to Pat & told him I have not given them a statement. Is there anything I can do to help you[?] Please get a note back to me as soon as possible. Rebecca.

The prosecutor stated "No objection," to which the court responded, "I don't think it was offered . . . ." Defense counsel expressed his intent not to offer the note into evidence. The prosecutor then insisted on offering it because Rebecca had read it in the jury's presence. The note was marked and admitted as State's Exhibit 17.

Rebecca confirmed the note was in her handwriting. She further stated Terry Vogel, an investigator for the Moore County District Attorney's office, had asked her to write it and send it to Appellant. According to instructions from Vogel, she gave the note to the jail cook to deliver to Appellant. Rebecca also testified that Pat informed her Appellant received the note, but the record is unclear concerning whether Appellant actually replied using Pat as a courier. Defense counsel then questioned Rebecca concerning her attempt to solicit a response from Appellant, and she answered affirmatively when asked whether the State assisted in the "ruse."

During his testimony, Vogel explained that he asked Rebecca to write the note to Appellant as part of a separate investigation concerning illicit activities being conducted at the Moore County Jail facility, including an illegal smuggling network. Vogel testified

5

that his review of jail phone calls verified that Rebecca's note was delivered to Appellant.

SIXTH AMENDMENT RIGHT TO COUNSEL

One of the primary purposes of the Sixth Amendment right to counsel is to preserve the integrity of the attorney-client relationship once it has been established. *Patterson v. Illinois*, 487 U.S. 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988). The Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated" against an accused "whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). Once the adversarial judicial process has been initiated, the right to counsel guarantees an accused the right to have counsel present at all "critical" stages of the criminal proceeding. *United States v. Wade*, 388 U.S. 218, 227-28, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The period from arraignment to trial is "perhaps the most critical period of the proceedings . . . during which the accused requires the guiding hand of counsel . . . ." *Id.* at 226. Interrogation by police, after charges have been brought, is such a critical stage. *Brewer*, 430 U.S. at 401.

Concerning Vogel's claim that the note was part of an investigation involving a separate offense, we note the Sixth Amendment right to counsel is offense specific. *Rubalcado v. State*, 424 S.W.3d 560, 570 (Tex. Crim. App. 2014). In determining what constitutes an "offense" for Sixth Amendment right-to-counsel purposes, and consequently, whether a separate offense is involved, the Supreme Court has resorted to double jeopardy law. *Id.* Offenses are considered separate if they would be

6

considered separate under the *Blockburger* same-elements test. *Id.* at 571 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

ANALYSIS

Here, Appellant's right to counsel for burglary of a habitation had attached prior to the time Vogel asked Rebecca to contact Appellant. Rebecca was a key witness for the State in Appellant's case. Vogel, as an investigator for the Moore County District Attorney's office, was an agent of the State.[4] Rebecca likewise acted as an agent of the State under Vogel's direction to deliberately elicit incriminating statements from Appellant. *See Rubalcado*, 424 S.W.3d at 576 (concluding that sexual assault victim was a government agent where she was recruited by law enforcement to record conversations intended to deliberately elicit incriminating responses from her assailant).

In its defense of Vogel's conduct, the State maintains Rebecca was asked to create the note as part of an on-going investigation into a separate offense (smuggling contraband into a correctional facility) that did not pertain to the pending offense for which the State acknowledges that Appellant's right to counsel had already attached. While we agree the two offenses are separate offenses for purposes of Appellant's right to counsel, we disagree with the State's position that the contact in question did not pertain to the offense at issue in this proceeding.

The note specifically referred to Appellant's upcoming appearance in court on the burglary of a habitation offense that is the subject of this appeal. Rebecca indicated she

---

[4] The State is responsible, in Sixth Amendment context, for the knowledge of all of its actors . . . . *Rubalcado v. State*, 424 S.W.3d 560, 574-75 (Tex. Crim. App. 2014) (citing *Michigan v. Jackson*, 475 U.S. 625, 634, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), *overruled on other grounds*, *Montejo v. Louisiana*, 556 U.S. 778, 797, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009)).

7

was going to be a witness in that case and that she had not given authorities a statement. She also asked Appellant what she could do to help him in that particular case. The words written by Rebecca at Vogel's request are specifically tied to the pending burglary of a habitation charge and are not solely related to a separate offense for which the right to counsel had not attached. Furthermore, nothing in the note supports the State's contention that it was created solely to investigate a jail smuggling operation. Accordingly, we find the District Attorney's office knowingly circumvented Appellant's right to counsel in this case by using a government agent to elicit incriminating information. *Maine v. Moulton*, 474 U.S. 159, 176, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985); *Massiah v. United States*, 377 U.S. 201, 206, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964).

The note also had the effect of eliciting evidence of an extraneous offense during the State's case-in-chief in violation of Rule 404(b) of the Texas Rules of Evidence. The statements of defense counsel and the prosecutor made during the admission of the note occurred in the presence of the jury. As such, the jury heard evidence that Appellant might possibly be involved in a jail smuggling operation. Under these circumstances, we conclude Appellant's Sixth Amendment right to counsel was violated when a State agent directed Rebecca to contact Appellant while he was represented by counsel, but without his counsel being present. *See Rubalcado*, 424 S.W.3d at 578.

HARM ANALYSIS

Misconduct leading to a total deprivation of the right to counsel at trial is a structural error that defies harmless error review. *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). "The right to counsel is too

8

fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Johnson v. State*, 169 S.W.3d 223, 230 n.34 (Tex. Crim. App. 2005) (citing *Glasser v. United States*, 315 U.S. 60, 75-76, 62 S. Ct. 457, 86 L. Ed. 680 (1942)). *See Rubalcado,* 424 S.W.3d at 578 (harmless error analysis not conducted after finding a violation of appellant's right to counsel occurred when the State used the complainant to communicate with the accused in an attempt to elicit incriminating statements). When, however, the misconduct leading to error does not amount to a complete denial of counsel, some standard of prejudice or materiality is required to establish a constitutional violation leading to the reversal of a conviction. *See Johnson*, 169 S.W.3d at 229-30. In these situations, appellate courts are guided by the principle that such a violation will lead to a reversal unless an appellate court determines beyond a reasonable doubt that the error did not lead to the conviction or punishment. TEX. R. APP. P. 44.2(a). Because the violation in this case did not lead to a total deprivation of Appellant's right to counsel, it is subject to a harm analysis.

In that regard, Rebecca's note was introduced into evidence at the request of the State. The jury was present and heard the discussions between defense counsel and the prosecutor concerning the origin of the note and its unexplained possession by defense counsel. The note was emphasized by the prosecution during the State's case-in-chief. Because the State's theory behind the note was that it was part of an investigation into jail smuggling operations, the jury was left with the impression that Appellant's character was that of a criminal. The note made an impression on the jury significant enough that, during deliberations, the jury sent a note to the trial judge asking

"[w]hat was the response given by Pat to Rebecca from [Appellant]."[5]  The jury's interest in the note and the State's explanation for the note informed the jury that Appellant was in jail and was under suspicion of illegal activities while in jail.  Without the constitutional protection of his right to counsel, Appellant was subjected to incriminating himself.

Furthermore, a violation of an accused's Sixth Amendment right to counsel under the guise of the State's investigation of a separate offense "invites abuse by law enforcement personnel . . . and risks the evisceration of the Sixth Amendment right recognized in *Massiah*."  *Rubalcado*, 424 S.W.3d at 569.  Given the totality of the circumstances surrounding this case, we cannot say beyond a reasonable doubt that the violation of Appellant's right to counsel just days before his trial did not contribute to his conviction.  Accordingly, we conclude the State's violation of Appellant's right to counsel amounted to reversible error.  Issues four and five are sustained.

ISSUES ONE, TWO & THREE—LEGAL SUFFICIENCY

Although we find issues four and five dispositive of this appeal, we nevertheless consider Appellant's sufficiency claims because, if successful, such claims would result in greater relief through a judgment of acquittal.  *Green v. State* 434 S.W.3d 734, 739 (Tex. App.—San Antonio 2014, pet. granted Sept. 17, 2014).  While trial error alone would not bar the State from retrying the case, a finding of legal insufficiency on appeal would interpose a jeopardy bar to retrial.  *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010).

---

[5] The judge replied, "[t]he Court cannot answer your . . . question.  Please continue your deliberations."

10

By his first three points, Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, he maintains the finding of guilt is based on circumstantial evidence impermissibly based on inference upon inference and the victim did not identify any property recovered as stolen from his residence. We disagree.

SUFFICIENCY STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*. See Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319; *Brooks,* 323 S.W.3d at 912. We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000).

The State was required to show that Appellant, with intent to commit theft, entered a habitation without the effective consent of the homeowner. TEX. PENAL CODE ANN. § 30.02(a) (West 2011). "Enter" means to intrude any part of the body or any

physical object connected with the body. *Id.* at (b). "Entry" is established when the plane of the opening of a house is broken and may be accomplished by placing a foot inside a door frame, by cutting window or door screens, or by breaking door lock or frame. *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd). The entry element of a burglary offense may be proven by inferences, just as inferences may be used to prove the elements of any other offense. *Lopez v. State*, 884 S.W.2d 918, 921 (Tex. App.—Austin 1994, pet. ref'd).

## ANALYSIS

Notwithstanding Appellant's assertion that inference upon inference was impermissibly used to convict him, there is direct evidence from which a reasonable juror could infer someone entered the Kiewiets' house, without their consent, and removed Richard's tool box and tools from the premises. Appellant admitted to Rebecca that he had been by the Kiewiets' house. Richard testified a window at the back of the house had been broken to gain entry, and both he and Brenda testified that Appellant did not have their consent to enter the house. Appellant told Sergeant Hayes he had borrowed Wesley's pickup to move, and upon consenting to a search, he fled. The pickup contained Richard's stolen tool box and tools co-mingled with Appellant's belongings.[6] Instead of providing a reasonable explanation for possessing recently stolen property,[7] Appellant fled from Sergeant Hayes after misrepresenting that he was

---

[6] Richard described the stolen red and black tool box, Craftsman saws and drills, and an Ideal bag containing a multimeter as some of the items stolen from his house. Brenda testified she observed what looked like Richard's tool box in the green pickup. *See Luckett v. State*, 586 S.W.2d 524, 526 (Tex. Crim. App. 1979) (identification of stolen property necessary when the only proof of burglary is possession of stolen property).

[7] Where there is independent evidence of a burglary, the unexplained possession of recently stolen goods may constitute sufficient evidence of guilt to support a conviction. *Buchanan v. State*, 780 S.W.2d 467, 469 (Tex. Crim. App. 1989).

12

going inside the house to continue moving.[8]  The jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given all testimony.  *Brooks*, 323 S.W.3d at 899.  Because this Court must resolve evidentiary inconsistencies in favor of the judgment, *id.,* viewing the evidence in a light most favorable to the verdict and drawing all reasonable inferences therefrom, we conclude Appellant's challenge to the sufficiency of the evidence fails.  Issues one, two, and three are overruled.

CONCLUSION

Having found that Appellant's due process rights and Sixth Amendment right to counsel were violated, we reverse the trial court's judgment and remand this cause for further proceedings.

Patrick A. Pirtle
Justice

Do not publish.

---

[8] Flight is admissible as a circumstance from which an inference of guilt may be drawn.  *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).